# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**JAMES THOMAS, SR. (#14749)**            **CIVIL ACTION**

**VERSUS**

**ROBERT TANNER, WARDEN**            **NO. 11-0425-JJB-DLD**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on May 7, 2012.

                           **MAGISTRATE JUDGE DOCIA L. DALBY**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JAMES THOMAS, SR. (#14749)** | **CIVIL ACTION** |
| **VERSUS** | |
| **ROBERT TANNER, WARDEN** | **NO. 11-0425-JJB-DLD** |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petitioner, James Thomas, Sr., challenges his conviction and 3-year sentence, entered upon a plea of guilty in 2002 in the Twenty-Third Judicial District Court for the Parish of Ascension, State of Louisiana, on a charge of driving while intoxicated, third offense. He asserts that the two predicate offenses utilized to form the basis for his sentence were constitutionally infirm, that he was denied effective assistance of counsel when his trial attorney failed to adequately research the constitutionality of the two predicate offenses, and that his guilty pleas entered in connection with the two predicate offenses were not knowing and voluntary because, in one of the cases, he was not advised of his right to a trial by jury, and in the other, he was wrongly informed that he had no right to a trial by jury.

From a review of the record, it appears that the petitioner was arrested in November, 2001, and charged with driving while intoxicated, fifth offense. After several amendments to the bill of information, he was ultimately charged with driving while intoxicated, third offense, and pleaded guilty to this offense on August 26, 2002. He was thereafter sentenced to serve three (3) years at hard labor, with credit for time served and with all but the first month of the sentence being suspended. The petitioner did not pursue a timely appeal from this conviction or sentence.

Shortly after the imposition of sentence, on September 13, 2002, the State filed a motion in the trial court to revoke the petitioner's probation. While that motion was still pending, the

petitioner filed, on April 27, 2004,[1] a pro se application for post-conviction relief in state court, arguing that one of his predicate convictions had been "squashed" and/or that one of his predicate offenses had not been for driving while intoxicated, and that he therefore should have been charged only with "second offense D.W.I." In addition, on August 27, 2004, through appointed counsel, the petitioner filed a Motion to Quash or, Alternatively, to Withdraw his Guilty Plea in the state court, asserting essentially the same claim, i.e., that one of his predicate offenses was improperly counted against him. At a hearing held on October 18, 2004, the trial court denied the petitioner's application and motion. Although the petitioner's appointed counsel then filed a timely Motion for Supervisory Writ on October 29, 2004, seeking appellate review of this determination, neither the petitioner nor his attorney thereafter perfected a writ application in the state appellate court.[2]

After a hearing before the trial court on March 21, 2005, the state trial judge revoked the petitioner's probation and ordered him to serve the original 3-year sentence. This sentence was to be served consecutively to a subsequent conviction and sentence which the petitioner was then apparently serving, entered in another parish. It does not appear from the record that the petitioner sought appellate review in connection with this revocation.

---

[1] Although the petitioner's application for post-conviction relief was docketed as filed in the state trial court on April 30, 2004, the Court will apply the "mailbox rule" articulated in Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), pursuant to which an inmate petitioner is deemed to have filed his pleadings on the date that he placed them in the prison mailing system, and not on the date that they were ultimately received and docketed by the court. Accordingly, inasmuch as the petitioner signed his state court application for post-conviction relief on April 27, 2004, the Court will utilize that date as the date of the petitioner's filing. In addition, in keeping with this rule, the Court will employ the dates that the petitioner apparently signed other pleadings as the dates of filing thereof.

[2] It appears that the reason a writ application was not perfected in the state appellate court on behalf of the petitioner may have been because the Order of the trial court dated October 26, 2004, which granted the petitioner's Motion for Supervisory Writ, also ordered that the Louisiana Appellate Project be appointed to represent the petitioner in connection with such writ. However, inasmuch as, under Louisiana law, a criminal defendant is not entitled to appointed appellate counsel in connection with the review of post-conviction rulings, the Appellate Project was never in fact notified or served in connection with that appointment. Further, upon being notified that the Louisiana Appellate Project would not be representing him, it does not appear that the petitioner himself thereafter perfected a timely writ application. Instead, his appointed trial attorney filed a separate "Motion to Appeal" which is further addressed in the body of this Report.

On April 16, 2005, the petitioner filed, through appointed counsel, a Motion for Appeal, wherein he sought to perfect a direct appeal of the original August, 2002, conviction, apparently arguing that one or both of the two predicate offenses used to support the third offense DWI conviction were constitutionally infirm and that the conviction was therefore invalid. The appellate court dismissed this appeal on July 11, 2005, finding (1) that the petitioner had no right to appeal his conviction inasmuch as his guilty plea entered in 2002 had effectively waived his right to challenge any non-jurisdictional defects in the proceedings, relying upon State v. Crosby, 338 So.2d 584 (La. 1976), and (2) that the appeal was not timely in any event, having been filed more than 2½ years after entry of the 2002 judgment appealed from, relying upon La. Code Crim. P. art. 914. It does not appear that the petitioner sought further review of this determination in the Louisiana Supreme Court.

Finally, on August 17, 2005, the petitioner filed, pro se, a Motion to Vacate, Set Aside, or Correct Illegal Sentence and an Application for Writ of Habeas Corpus in the state trial court, challenging the voluntary nature of his 2002 guilty plea, asserting that the predicate convictions utilized to support the charge were constitutionally infirm because he had not been fully advised of his rights prior to pleading guilty in connection with the predicate offenses and arguing that he was provided with ineffective assistance of counsel. After a hearing conducted on July 20, 2009, the matter was submitted to the trial judge for a ruling. Before a ruling could be made, however, the petitioner - who apparently interpreted the July 20, 2009, hearing as having resulted in a formal denial of his application and motion - sought supervisory review of that purported determination in the intermediate state appellate court by filing a Notice of Intention to File Appeal on July 23, 2009. Upon a finding that there was "no final judgment for purposes of appeal," the Louisiana Court of Appeal for the First Circuit dismissed the appeal on December 17, 2009. When the petitioner sought further review of that determination in the Louisiana Supreme Court, the Court denied review with a one word denial on March 25, 2011. See State ex rel. Thomas v. State, 61 So.3d 654 (La. 2011).

On June 10, 2011, the petitioner filed the instant habeas corpus proceeding in this Court. Based upon the foregoing, the Court concludes that the application is untimely and is also procedurally defaulted.

Pursuant to 28 U.S.C. § 2244(d), there is a one-year statute of limitations applicable to federal habeas corpus claims brought by prisoners in state custody. This statute provides, in pertinent part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> \*          \*          \*          \*
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment definitive claim is pending shall not be counted toward any period of limitation under this sub-section.

28 U.S.C. § 2244(d)(1) and (2).

In the instant case, the petitioner's conviction became final on September 25, 2002, thirty days after the entry of judgment inasmuch as the petitioner did not seek appellate review thereof. See La. Code Crim. P. art. 881.1. The petitioner then waited 580 days before he filed his first application for post-conviction relief in the state trial court on April 27, 2004. As such, pretermitting consideration of any other time periods, the limitations period had fully expired by the time that the petitioner filed his initial application for post-conviction relief in state court, and his application in this Court is therefore untimely.

Although this Court has the power to equitably toll the limitations period in exceptional circumstances, Davis v. Johnson, 158 F.3d 806 (5th Cir. 1998), this Court finds no compelling reason to recommend tolling in this case. Contrary to the petitioner's assertions, there was no apparent impediment to his ability to seek review of the judgment of conviction entered on August 26, 2002. That judgment was a full and final judgment of conviction, and the mere fact that the

State thereafter sought to revoke the petitioner's supervised probation, and the fact that the probation was not in fact revoked until March, 2005, at which time the petitioner was ordered to serve his original three-year sentence, does not compel a conclusion that the judgment was not final for purposes of his right to appeal. Accordingly, the Court declines to recommend equitable tolling in this case.

Further, in the alternative, it appears that the petitioner's claims are subject to dismissal by reason of procedural default.

When a state court decision to deny post-conviction relief rests on a state procedural basis that is independent of the federal question raised by the petitioner and is adequate to support the judgment, the federal court lacks jurisdiction to review the merits of the petitioner's federal claims. Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Moore v. Roberts, 83 F.3d 699 (5th Cir. 1996), cert. denied, 519 U.S. 1093, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997). The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." Coleman v. Thompson, supra:

> In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

501 U.S. at 731-32, 111 S.Ct. at 2554-55 (quoting Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)); Moore v. Roberts, supra.

For the independent and adequate state ground doctrine to apply, the state court adjudication of a habeas petitioner's claim must have been explicitly based on a state procedural rule. Moore v. Roberts, supra; Sones v. Harbett, 61 F.3d 410, 416 (5th Cir. 1995). The procedural default doctrine presumes that the "state court's [express] reliance on a procedural bar functions as an independent and adequate ground in support of the judgment." Id. The petitioner can rebut this presumption only by establishing that the procedural rule is not "strictly or regularly followed"

or, notwithstanding, by (1) demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) demonstrating that "failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, supra; Moore v. Roberts, supra.

In the instant case, it appears that after the denial by the trial court, on October 18, 2004, of the petitioner's initial application for post-conviction relief and motion to quash, he did not perfect a writ application in the state appellate courts. Thereafter, the petitioner, through his attorney, filed a Motion to Appeal on April 16, 2005, wherein he attempted to mount a direct challenge to his August, 2002, conviction. This appeal was dismissed by the intermediate appellate court on July 11, 2005, in express reliance upon state procedural rules, specifically upon a finding that the appeal was both untimely and barred by the petitioner's failure to preserve, in connection with his guilty plea, any non-jurisdictional issues for appellate review. The petitioner did not seek further review of this determination in the Louisiana Supreme Court.[3] Finally, after the evidentiary hearing conducted in the state trial court on July 20, 2009, in connection with the petitioner's Motion to Vacate, Set Aside or Correct Illegal Sentence and Application for Writ of Habeas Corpus, the petitioner erroneously interpreted that hearing as having resulted in an appealable judgment, and he again attempted to obtain appellate review by filing a Notice of Intention to File Appeal on July 23, 2009. Notwithstanding, the intermediate appellate court again denied review, dismissing the appeal on December 17, 2009, upon a finding that there was no final judgment from which an appeal could be taken, relying expressly upon La. Code Crim. P. 912. When the petitioner sought

---

[3] It appears that the only appellate review which the petitioner obtained in this case was in connection with an application for mandamus relief filed in the Louisiana Court of Appeal for the First Circuit in August, 2006, wherein he complained that the state trial court was not moving forward in connection with his Motion to Vacate, Set Aside, or Correct Illegal Sentence and Application for Writ of Habeas Corpus and had, instead, continued these matters without date on May 15, 2006. Although the intermediate appellate court denied the application for mandamus relief on October 2, 2006, the Louisiana Supreme Court subsequently granted relief on March 24, 2008, solely for the purpose of transferring the matter to the trial court with instructions to act on the pending motion and application.

further review of this determination in the Louisiana Supreme Court, that court denied his writ application in a one-word denial on March 25, 2011. It thus appears that each time that the petitioner sought review in connection with his claims, the state courts denied such review in express reliance upon state procedural rules.[4] Accordingly, it appears that the plaintiff's claims are procedurally defaulted.

Although, as noted above, a habeas petitioner may overcome a procedural default by demonstrating cause and prejudice resulting from a constitutional violation or by demonstrating that a failure to consider his claims will result in a fundamental miscarriage of justice, Coleman v. Thompson, supra, the petitioner has made no attempt to make these showings in this case. Accordingly, the Court is precluded from considering the petitioner's claims by reason of his procedural default.

## RECOMMENDATION

It is recommended that the petitioner's application for habeas corpus relief be dismissed as untimely and as barred by procedural default.

Signed in Baton Rouge, Louisiana, on May 7, 2012.

_____
**MAGISTRATE JUDGE DOCIA L. DALBY**

---

[4] Although the Louisiana Supreme Court did not indicate, in its one-word denial, that it was relying upon a state procedural rule, it is presumed in such instance that the court relied upon the same grounds as the last reasoned state court opinion. Ylst v. Nunnemaker, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).